IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FLEXIBLE INNOVATIONS LTD., | § | |
| a Texas Limited Partnership, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Case No. 4:14-CV-00350-O |
| v. | § | |
| | § | |
| K DESIGN MARKETING, INC., | § | |
| A Montana Corporation | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
## WITH BRIEF IN SUPPORT

Flexible Innovations Ltd., a Texas Limited Partnership, hereby requests that the Court enter a default judgment against the Defendant, K Design Marketing, Inc., a Montana Corporation, as authorized by Rule 55(b), Federal Rules of Civil Procedure ("FRCP"), showing as follows:

# TABLE OF CONTENTS

**PAGE**

A.   Facts Showing Right to Obtain Judgment by Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B.   Standard for Granting Default Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C.   Facts Establishing Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.   Subject Matter Jurisdiction, Personal Jurisdiction, and Venue . . . . . . . . . . . . . . . . . . . . 11

E.   Causes of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    1.   Necessity to Establish . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    2.   Trademark Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    3.   Lanham Act Unfair Competition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    4.   Common Law Unfair Competition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

F.   Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    1.   Permanent Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    2.   Request for Hearing on Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    3.   Amount of Damages, Profits, or Discretionary Award . . . . . . . . . . . . . . . . . . . . 19

    4.   Attorneys' Fees & Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    5.   Post-Judgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

G.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**PAGES**

**CASES**

*Beachhead, L.P. v. Solar Night Indus., Inc.*, No. 3:08-CV-0718-D,
    2008 WL 4692856 (N.D. Tex. Oct. 23, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182 (7th Cir. 1982) . . . . . . . 14, 17

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*,
    174 F.3d 1036 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Caterpillar Financial Services Corp. v. Lindsey*, 218 F.R.D. 145 (S.D. Tex. 2003) . . . . . . . . . . . 6

*Chevron Intellectual Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610
    (N.D. Tex. Aug. 24, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Cycle Sport, L.L.C. v. Dinli Metal Indus. Co., Ltd.*, No. 3:07-CV-00253-O,
    2008 WL 4791544 (N.D. Tex. Oct. 30, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 12

*GuideOne Ins. Co. v. House of Yahweh*, 828 F. Supp. 2d 859 (N.D. Tex. 2011) . . . . . . . . . . 6, 12

*Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 14

*Hudgens v. Goen*, 673 S.W.2d 420 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) . . . . . . . . . 16

*James v. Frame*, 6 F.3d 307 (5th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104
    (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Mayflower Transit, L.L.C. v. Troutt*, 332 F. Supp. 2d 971 (W.D. Tex. 2004) . . . . . . . . . . . . . . . 6

*Miller v. Lone Star Tavern, Inc.*, 593 S.W.2d 341 (Tex. Civ. App.—Waco 1979, no writ) . . . . 16

*Morningware, Inc. v. Hearthware Home Products, Inc.*, 673 F. Supp. 2d 630
    (N.D. Ill. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200 (5th Cir.1975) . . . . . . . . . . . . . . . 6

*N. Am. Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008) . . . . . . . . 13-14

*Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150
    (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 17, 19

*S&H Industries, Inc. v. Selander*, 932 F. Supp. 2d 754 (N.D. Tex. 2013) . . . . . . . . . . . . . . *passim*

*Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684 (5th Cir.1992) . . . . . . . . . . . 20

*T-Mobile USA Inc. v. Shazia & Noushad Corp.*, No. 3:08-CV-00341-O,
   2009 WL 2003369 (N.D. Tex. July 10, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . 19

*Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56 (1st Cir. 2008) . . . . . . . . . . . . . 13

## STATUTES & RULES

15 U.S.C. § 1051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

15 U.S.C. § 1114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 18

15 U.S.C. § 1116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

15 U.S.C. § 1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

15 U.S.C. § 1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15, 18

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

28 U.S.C. § 1391. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

28 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Rule 54, Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 20, 21

Rule 55, Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**MOTION AND BRIEF**

**A.  Facts Showing Right to Obtain Judgment by Default.**

1.    Flexible Innovations Ltd. ("FI") is the Plaintiff.  The Defendant is K Design Marketing, Inc., a Montana Corporation ("KDM").  Complaint (Doc 1) ¶ 2.

2.    On May 19, 2014, Plaintiff FI sued Defendant KDM in this case for trademark infringement, Lanham Act unfair competition, and common law unfair competition.  Complaint.

3.    Summons was issued as to Defendant K Design Marketing, Inc., a Montana Corporation on May 19, 2014 (Doc 6).

4.    Service was accomplished on Defendant on May 23, 2014 (Doc 7).

5.    The original Proof of Service for Defendant was filed on May 27, 2014 (Doc 7).

6.    As of October 7, 2014, more than 21 days after service, Defendant KDM has not filed nor served a responsive pleading or otherwise defended the suit.

7.    A Clerk's Entry of Default against Defendant was signed and filed on July 9, 2014 (Doc 9).

8.    Therefore, Plaintiff is entitled to seek entry of a default judgment against Defendant KDM.  *See Cycle Sport, L.L.C. v. Dinli Metal Indus. Co., Ltd.*, No. 3:07-CV-00253-O, 2008 WL 4791544 at *3 (N.D. Tex. Oct. 30, 2008) (proper entry of clerk's default authorizes application to the Court for a default judgment).

**B.  Standard for Granting Default Judgment.**

9.    A default judgment is not a matter of right, but committed to the discretion of the trial court.  *Cycle Sport*, 2008 WL 4781544 at *4.  *Accord*, *T-Mobile USA Inc. v. Shazia & Noushad Corp.*, No. 3:08-CV-00341-O, 2009 WL 2003369 at *2 (N.D. Tex. July 10, 2009); *accord*, *Chevron Intellectual Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610 at *2

(N.D. Tex. Aug. 24, 2009).  As this Court has held:

> A district court in the Fifth Circuit looks to the following six factors when considering whether to grant a default judgment: (1) if the default was caused by a good faith mistake or excusable neglect; (2) if there has been substantial prejudice; (3) the harshness of a default; (4) if there are material issues of fact; (5) if grounds for a default judgment are clearly established; and (6) if the court would think it was obligated to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir.1998).

*Cycle Sport* at *4; *accord*, *T-Mobile* at *2; *Chevron* at *2.

10.    There is no evidence of good faith or excuse.  FI is being prejudiced because the violative conduct of KDM is ongoing.  See Complaint (Doc 1) ¶¶ 17 & 18.  A default would not be harsh because it would merely operate to halt misconduct.  The facts are established by the Complaint and its attachments.  These facts clearly establish the grounds for judgment.  There is no reason why a default would need to be set aside.  Further, avoiding judgment would disserve justice because Plaintiff FI would be unable to advance its rights or stop misconduct without the benefit of a judgment.

**C.    <u>Facts Establishing Causes of Action</u>**.

11.    By defaulting, Defendants have admitted the well-pleaded allegations of the Complaint.  "In evaluating the merits of a motion for default judgment, the Court treats the well-pleaded facts in the movant's complaint as true.  *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir.1975) (noting that '[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact')."  *GuideOne Ins. Co. v. House of Yahweh*, 828 F. Supp. 2d 859, 861 (N.D. Tex. 2011); *accord*, *Mayflower Transit, L.L.C. v. Troutt*, 332 F. Supp. 2d 971, 978 (W.D. Tex. 2004); *Caterpillar Financial Services Corp. v. Lindsey*, 218 F.R.D. 145, 148 (S.D. Tex. 2003); *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010) ("A defendant's default is an admission of all well-pleaded factual

allegations in the complaint except those relating to damages.") (citation omitted).   These allegations in this instance show that Plaintiff is entitled to recover against KDM for trademark infringement, Lanham Act unfair competition, and common law unfair competition, as will be shown.  More specifically, Defendants have admitted the facts below.

12.     Rakupuri, Inc., a Japanese corporation with its principal place of business in Japan, manufactures, markets, and sells patented DIGICLEAN® adhesive microfiber display screen cleaning wipes.  By assignment dated November 20, 2012 from Rakupuri, Plaintiff FI became and now is the owner of United States Trademark Registration No. 3,407,948 ("the '948 Registration") for DIGICLEAN® for "Sheet-shaped wiping cloth for cleaning display screens of car navigation, cellular phones, or handheld game machines" ("DIGICLEAN Mark"), including all claims for damages and lost profits for all past infringement of said mark (DIGICLEAN) and said registration.  A copy of the DIGICLEAN '948 Registration certificate and the assignment as recorded in the United States Patent and Trademark Office was attached to the Complaint as Exhibit A, incorporated here by reference.   The '948 Registration is valid, subsisting and incontestable.  Examples of Plaintiff FI's DIGICLEAN microfiber display screen cleaning wipes were shown in Exhibit B to the Complaint, incorporated here by reference.  See Complaint ¶ 6.

13.     Rakupuri was the initial owner of U.S. Patent 7,431,983 issued October 7, 2008, entitled "WIPING SHEET" (the "'983 Patent"), which details its "DIGICLEAN" wiping cloth. By assignment, Plaintiff FI is now the owner of all right, title and interest of the '983 Patent.  A copy of the '983 Patent was attached as Exhibit C to the Complaint, incorporated here by reference.  See Complaint ¶ 7.

14.     Plaintiff FI has an Exclusive Distributorship Agreement ("Agreement") with Rakupuri.  Under the Agreement, Plaintiff FI is the "sole and exclusive distributor to sell and

distribute Products (DIGICLEAN) in North America and non-exclusively in the other countries except Japan." See Complaint ¶ 8.

15.     On or about November 30, 2012, Plaintiff FI brought a lawsuit against IdeaMax, et al., a California general partnership, in the United States District Court for the Northern District of Texas, Fort Worth Division, being case no. 4:12-cv-00856-A.  In this lawsuit, Plaintiff FI alleged, inter alia, multiple trademark violations as IdeaMax was attempting to lure Plaintiff FI's "DIGICLEAN" product customers onto its website for the resale of its "MICROCLEAN" screen cleaning wipe products.  As a result of this lawsuit, a series of injunctions were entered against IdeaMax enjoining IdeaMax, their "agents, attorneys, employees, and representatives, and all who are in active concert with any of them. . ." from use of the terms "DigiClean," "DigiPad," "DigiCloth" and "DigiStand" or any name or mark deceptively similar to Plaintiff's "DIGICLEAN" mark as used in association with screen wipes.  See Complaint Exhibit D, pp. 1-2, incorporated herein by reference.  Further, IdeaMax was required to give notice to the industry search engines of such injunctions and to remove all meta-tags to "DigiClean," "DigiPad," "DigiCloth," and "DigiStand" in association with IdeaMax's "MicroClean" screen cleaner products so as to disassociate IdeaMax with any of Plaintiff FI's DIGICLEAN marks.   See Complaint Exhibit D, pp. 2-3, incorporated herein by reference.  See Complaint ¶ 9.

16.     On or about mid-September 2012 and 2013, Defendant KDM made purchases of "DIGICLEAN" screen wipe product from Plaintiff FI.  Copies of the respective Purchase Orders are attached to the Complaint as Exhibit E, incorporated herein by reference.  See Complaint ¶10.

17.     Defendant KDM is the owner and operator of at least the following websites: www.imprintmyscreencleaner.com and www.imprintmylogo.com.  See Complaint ¶ 11.

18.     When a prospective customer searches "Google" for "DIGICLEAN" product, one of the first several "hits" results is a web-based link to www.imprintmyscreencleaner.com webpage as shown in Exhibit F to the Complaint, incorporated herein by reference.  This association with "DIGICLEAN" improperly suggests that Defendant KDM is a supplier of "DIGICLEAN" product, while also providing "MICROCLEAN" products.  See Complaint ¶ 12.

19.     When clicking on the "MicrocleanMAX" tab on page 1 of Exhibit F, the screen appearing at Complaint Exhibit G, pp. 1-2, incorporated herein by reference, pops up.  The URL has the trailing ".com/digiclean.html" moniker.  Further, when looking into the various hidden "Key Words" or "meta tags" associated with this web page, it is clear that Defendant KDM is attempting to divert "hits" to its website that appropriately belong to Plaintiff FI.  Note on page 3 of Exhibit G the "Key Words" as shown include "digiclean" . . . "digi pad," "digi clean." Defendant KDM has made a willful effort to misdirect Plaintiff FI's "DIGICLEAN" "hits" to Defendant KDM.  Looking to another of its webpages on this site, Exhibit H clearly shows Defendant KDM is offering to sell a "DIGI PAD" product, which it does not sell, while also attempting to switch a "DIGICLEAN" customer to a competing "MICROCLEAN" screen cleaner.  See Complaint ¶ 13.

20.     When clicking on Defendant KDM's website www.imprintmylogo.com, the webpage of Complaint Exhibit I, incorporated herein by reference, is pulled up for viewing.  In the upper right hand corner of Exhibit I is a "Quick Search" box.  See Complaint ¶ 14.

21.     If the user types in "DIGICLEAN" in the "Quick Search" box, the pages shown on Complaint Exhibit J, incorporated herein by reference, are pulled up.  These pages detail an array of Plaintiff FI's "DIGICLEAN" products—all of which Defendant KDM does not sell— with substituted competing IdeaMax "MICROCLEAN" screen cleaning products interspersed.

Further, should the "Quick Search" include the words "MICROCLEAN," the webpages shown at Complaint Exhibit K, incorporated herein by reference, are pulled up, detailing a wide variety of IdeaMax supplied "MICROCLEAN" products.  See Complaint ¶ 15.

22.     Defendant KDM is attempting to "bait and switch" prospective purchasers by illegally using Plaintiff FI's "DIGICLEAN" mark as a hidden key word or meta tag to misdirect Plaintiff FI's "DIGICLEAN" customers to Defendant KDM's website, believing that Defendant KDM is a provider of "DIGICLEAN" product (when it is not), so as to sell IdeaMax's "MICROCLEAN" products.  Such a meta tag is essentially a programming code instruction, normally invisible to the Internet user or searcher.  If someone types in "DIGICLEAN" as a search term, the search via an Internet search engine will result in a link to the Defendant KDM's website, which if clicked on will take the searcher to KDM's website.  Therefore, anyone searching for "DIGICLEAN" on the Internet may be misdirected to advertising of Defendant KDM, rather than being directed solely to Plaintiff FI.  See Complaint ¶ 16.

23.     As shown on its website, Defendant KDM is using Plaintiff FI's trademarks, "DIGICLEAN" and "Digi Pad," to misidentify its microfiber cleaning cloth that it sells, or misdirect customers, in an effort to cause initial interest confusion, or further or alternatively source or affiliation confusion, and thereby trade upon the goodwill of Plaintiffs' "DIGICLEAN" mark.  Complaint Exhibits F, H, and J, incorporated herein by reference.  See Complaint ¶ 17.

24.     Defendant KDM is using the "Digi Pad" mark in association with and to misdirect customers to its "MicroClean" screen wiping products, in its attempt to trade upon the goodwill of Plaintiff FI's "DIGICLEAN" mark, and sell competing IdeaMax "MICROCLEAN" products.  See Complaint ¶ 18.

25.     Further, Defendant KDM has attempted to associate Plaintiff FI's "DIGICLEAN"

products with Defendant KDM in a concerted effort to trade off of Plaintiff's goodwill and cause confusion in the marketplace as to affiliation.  This confusion and identification is shown, by way of example, in Defendant's website pages shown in Complaint Exhibits F, H, and J, incorporated herein by reference, all prominently depicting "DIGICLEAN" or "Digi Pad" products as being provided by Defendant KDM.  See Complaint ¶ 19.

26.     As a result of the foregoing, Plaintiff FI has been damaged and Defendant KDM has profited from such misconduct.  See Complaint ¶ 20.

**D.     Subject Matter Jurisdiction, Personal Jurisdiction, and Venue.**

27.     This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq*.  Further, there is diversity of citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Therefore, this Court has jurisdiction under 28 U.S.C. §§ 1331 and/or 1332(a)(1).  Further, this Court also has jurisdiction over the Texas State common law claim of unfair competition under 28 U.S.C. § 1367(a).  See Complaint ¶ 3.

28.     This Court has personal jurisdiction over Defendant KDM because Defendant KDM has numerous contacts with Texas, including actively operating its interactive websites (see Complaint ¶¶ 11-16) in Texas, and it has taken tortious actions and entered into contracts and sold goods in this District and Division and this cause of action arises out of such actions, contracts, and sales.  See Complaint Exhibits E through K, incorporated herein by reference.  See Complaint ¶ 4.

29.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claims occurred in this District and Division and that Defendant KDM has taken tortious actions and entered into contracts and sold goods in this District and Division and this cause of action arises from such actions, contracts and sales.  28

U.S.C. § 1391(b)(3) & (c)(2).  See Complaint ¶ 5.

**E.**     **Causes of Action**.

1.     Necessity to Establish.

30.     The conceded factual allegations set forth above are adequate to sustain the causes of action pled and entitle Plaintiff FI to the relief prayed for in the Complaint, as is required. *See GuideOne*, *supra*, 828 F. Supp. 2d at 861 ("Those allegations, along with any additional evidence presented by the movant, must be sufficient to support the requested judgment.  *See* [*Nishimatsu*, *supra*, 515 F.2d at 1206] ('[A] defendant's default does not in itself warrant the court in entering a default judgment.  There must be a sufficient basis in the pleadings for the judgment entered.').";  *Cycle Sport*, *supra*, 2008 WL 4791544 at *4 ("Therefore, the Court may enter a default judgment against Dinli Metal if the factual allegations in Cycle Sport's complaint establish a valid cause of action.") (citation omitted);  *Lyons P'ship*, *supra*, 702 F. Supp. 2d at 111 ("'[A]fter [a] default, ... it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.'") (citations omitted);  *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010)  ("Put differently, liability does not automatically attach from the well-pleaded allegations of the complaint, as it remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief.") (citation omitted).

2.     Trademark Infringement.

31.     "To prevail on a trademark infringement claim, a plaintiff must prove: (1) ownership of a legally protectible mark; and (2) a likelihood of confusion between the plaintiff's mark and a mark utilized by the defendant."  *S&H Industries, Inc. v. Selander*, 932 F. Supp. 2d 754, 760 (N.D. Tex. 2013) (citations omitted).  Plaintiff FI owns legally protectable marks,

"DIGICLEAN®", ¶ 12 *supra*, and "DigiPad", *cf.* ¶ 23 *supra*.

32.     With respect to likelihood of confusion, Defendant KDM is attempting to "bait and switch" prospective purchasers by illegally using Plaintiff FI's "DIGICLEAN" mark as a hidden key word or meta tag to misdirect Plaintiff FI's "DIGICLEAN" customers to Defendant KDM's website, believing that Defendant KDM is a provider of "DIGICLEAN" product (when it is not), so as to sell IdeaMax's "MICROCLEAN" products.   At the time that this case was initiated,  if "DIGICLEAN" was typed in as a web-based search term, the search via an Internet search engine would result in a link to the Defendant KDM's website.   If the link was clicked, it would direct the searcher to KDM's website.   Therefore, anyone searching for "DIGICLEAN" on the Internet may be misdirected to advertising of Defendant KDM, rather than being directed solely to Plaintiff FI.   See Complaint ¶ 16.

33.     Therefore, the only question is whether a defendant's use of a competitor's trademark in defendant's meta tags, having the effect of "directing" a potential customer looking for the competitor's products to the defendant's website and products (creating a likelihood of confusion), is a use of a mark that can constitute a Lanham Act violation.   It can.   In a very thorough analysis on the point, the court in *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999), held that such "misdirection" can generate "initial interest confusion" which may be an infringement.   *Id.* at 1062.   Such initial interest confusion "works a sufficient trademark injury."   *Id.* at 1063.   As of the date of that opinion, "The few courts to consider whether the use of another's trademark in one's metatags constitutes trademark infringement have ruled in the affirmative."   *Id.* at 1064.   *See also Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 129-30 (2d Cir. 2009); *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 59-62 (1st Cir. 2008); *N. Am. Medical Corp. v. Axiom Worldwide, Inc.*,

522 F.3d 1211, 1222 (11th Cir. 2008) ("Like the *Brookfield* and *Promatek* courts, we ultimately conclude that a company's use in meta tags of its competitor's trademarks may result in a likelihood of confusion."); *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1040 (9th Cir. 2003) ("Because Garcia admits to using Horphag's Pycnogenol trademark and specifically admits to using the Pycnogenol mark in the meta-tags for his websites, his use satisfies the terms of trademark infringement in the first instance."); *Morningware, Inc. v. Hearthware Home Products, Inc.*, 673 F. Supp. 2d 630, 637-38 (N.D. Ill. 2009). Therefore, the allegations of the Complaint establish trademark infringement.   15 U.S.C. § 1114(1)(a);   *see also Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982) ("the default judgment freed plaintiff from the requirement of proving a likelihood of confusion").   See Complaint ¶¶ 12-16.

34.   Defendant KDM has further, without the consent of Plaintiff FI, used in commerce a reproduction, counterfeit, copy, or colorable imitation of the registered DIGICLEAN® mark in connection with the sale, offering for sale, distribution, or advertising of goods or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.   This establishes trademark infringement.   15 U.S.C. § 1114(1)(a);   *Lyons P'ship*, *supra*, 702 F. Supp. 2d at 113; *Rolls-Royce*, *supra*, 688 F. Supp. 2d at 155; *cf. Breuer*, 687 F.2d at 186 (default judgment frees plaintiff from proving a likelihood of confusion).

3.   <u>Lanham Act Unfair Competition.</u>

35.   As shown on its website, Defendant KDM is using Plaintiff FI's trademarks, "DIGICLEAN" and "Digi Pad," to misidentify its microfiber cleaning cloth that it sells, or misdirect customers, in an effort to cause initial interest confusion.   Further, such actions alternatively cause source or affiliation confusion.   Defendant KDM thereby trades upon the

goodwill of Plaintiffs' "DIGICLEAN" mark.  Defendant KDM is using the "Digi Pad" mark in association with and to misdirect customers to its "MicroClean" screen wiping products, in its attempt to trade upon the goodwill of Plaintiff FI's "DIGICLEAN" mark, and sell competing IdeaMax "MICROCLEAN" products.  Further, Defendant KDM has attempted to associate Plaintiff FI's "DIGICLEAN" products with Defendant KDM in a concerted effort to trade off of Plaintiffs' goodwill and cause confusion in the marketplace as to affiliation.

36.     Therefore, Defendant KDM has, in connection with goods, used in commerce false or misleading descriptions of facts, or false or misleading representations of facts, which are likely to cause confusion as to the origin, sponsorship, or approval of their goods by another person; or, in commercial advertising or promotion, misrepresented the nature, characteristics, or qualities of their or Plaintiff FI's goods or commercial activities.  Plaintiff FI believes that it is, or is likely to be, damaged by such acts.  Also, Defendant KDM has made false designations of origins of their product with respect to using "DIGICLEAN®" and "Digi Pad" as trademarks, thereby identifying its product with Plaintiff FI as a source.  These admitted facts show statutory unfair competition under 15 U.S.C. § 1125(a).  See Complaint ¶¶ 28-31.  *See Lyons P'ship*:

> To state a claim of unfair competition under the Lanham Act, the plaintiff must allege that the defendant: "(1) made false representations, (2) for goods, (3) in interstate commerce, (4) in commercial advertising or promotion, (5) about a material facet of [the plaintiff's] product, (6) that caused damage to [the plaintiff]."

*Id.*, 702 F. Supp. 2d at 113 (citation omitted).  *See also S&H Industries*, 932 F. Supp. 2d at 762.

4.     <u>Common Law Unfair Competition</u>.

37.     Defendant KDM has engaged in unfair competition with Plaintiff FI through violations of statutory obligations (Lanham Act violations), thereby obtaining profits that would otherwise have gone to Plaintiff FI and thereby damaging Plaintiff FI.  This establishes unfair

competition under Texas common law. *Cf. Hudgens v. Goen*, 673 S.W.2d 420, 423 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) ("a cause of action based on unfair competition is ... the appropriation of a competitor's business to his injury.") (citations and internal quotation marks omitted); *Miller v. Lone Star Tavern, Inc.*, 593 S.W.2d 341, 344 (Tex. Civ. App.—Waco 1979, no writ) (use of confusingly similar trade name). *See also S&H Industries*, 932 F. Supp. 2d at 763 ("Unfair competition claims under Texas law are analyzed under the same standard as claims under the Lanham Act.") (citations omitted).

**F.**    **Remedies**.[1]

    1.    Permanent Injunction.

38.    Plaintiff FI requests a permanent injunction enjoining Defendant KDM from infringing Plaintiff's trademarks and unfairly competing. As this Court has stated: "A permanent injunction is appropriate if a plaintiff can prove: (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest." *Chevron*, 2009 WL 2596610 at *3 (citation omitted); *accord*, *S&H Industries*, 932 F. Supp. 2d at 765. The facts showing the propriety of such a permanent injunction in *Chevron* are basically the same as those shown here, *i.e.*:

> Here, the Court finds that Plaintiff's request for a permanent injunction is deserved. Defendant's default constitutes actual success on the merits. Further, Plaintiff has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendant. Requiring Defendant to restrain from future infringement will cause him minimal to no harm, and any potential

---

[1] "Next, the Court must determine whether it would be appropriate to award Plaintiff the remedies requested in its Motion upon the entry of default judgment. In awarding relief, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Therefore, the relief prayed for in a plaintiff's complaint limits the relief available on default judgment. If the requested relief does not differ in kind from, or exceed in amount, what is demanded in the pleadings, the Court must then determine whether the relief requested is appropriate based on the governing law." *T-Mobile*, 2009 WL 2003369 at *3; *accord*, *Chevron*, 2009 WL 2596610 at *3 (Lanham Act and related claims cases).

> harm caused by requiring him to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted. Finally, an injunction would serve the public interest by promoting compliance with intellectual property law. Accordingly, a permanent injunction is an appropriate remedy upon the entry of default judgment.

*Id.*, 2009 WL 2596610 at *3 (citations omitted).

39.     *Accord*, *Breuer*, 687 F.2d at 186 ("the district court was clearly entitled to conclude that defendants' use of the same and a similar term was irreparably injurious to plaintiff; that the injury to plaintiff outweighed any harm defendants may sustain in being unable to use the names in question; and that the public interest would not be disserved by the issuance of such injunctive relief."); *Lyons P'ship*, 702 F. Supp. 2d at 118-19 ("Under section 34 of the Lanham Act, the court has the 'power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable.' 15 U.S.C. § 1116(a). ... As discussed, plaintiffs have demonstrated defendants' liability, and thus, actual success on the merits. Where, as here, plaintiffs have established a *prima facie* case of infringement, irreparable harm is presumed.") (citation omitted); *Rolls-Royce*, 688 F. Supp. 2d at 159 ("Actual success on the merits is shown by virtue of the defendant's default. In a trademark case, irreparable injury is established where 'there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'") (citations omitted); *cf. S&H Industries*, 932 F. Supp. 2d at 765 ("The same evidence that supported a likelihood of confusion with regard to Plaintiff's trademark infringement claim demonstrates the necessary irreparable harm.") (citations omitted).

40.     A permanent injunction was granted in a trademark infringement case by this Court in *T-Mobile*, discussed as follows:

> In addition to damages, Plaintiff requested a permanent injunction enjoining Defendants from engaging in unlawful business practices in both its Motion and

Complaint. ... Thus, the Court next considers whether a permanent injunction is an appropriate remedy in this case. Under 15 U.S.C. § 1116(a), this Court has the power to grant a permanent injunction for a violation of the Lanham Act. A permanent injunction is appropriate if a plaintiff can prove (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *Courts have acknowledged that default against a defendant is tantamount to actual success on the merits.*

Here, the Court finds that Plaintiff's request for a permanent injunction is deserved. Defendants' default constitutes actual success on the merits. Further, T–Mobile has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendants. Requiring Defendants to restrain from future infringement will cause them minimal to no harm, and any potential harm caused by requiring them to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted. Finally, an injunction would serve the public interest by promoting compliance with intellectual property law. Accordingly, a permanent injunction is an appropriate remedy upon the entry of default judgment.

*Id.*, 2009 WL 2003369 at *4 (emphasis added; citations omitted).

41.     Accordingly, aside from a determination of liability as to all three causes of action based on the default and the facts and law delineated *supra*, Plaintiff FI seeks the entry of a permanent injunction as prayed for in the Complaint; particularly, that Defendant KDM be enjoined against further violations of 15 U.S.C. §§ 1114 and 1125(a), as well as any future acts of unfair competition by Defendant KDM against Plaintiff FI, including but not limited to ordering Defendant KDM not to further use "DIGICLEAN®" and "Digi Pad" in any manner (including, but not by way of limitation, as a hidden keyword or meta tag), or any name or mark deceptively similar thereto.  Complaint at 8, Prayer for Relief ¶ A.

2.     <u>Request for a Hearing on Damages</u>.

42.     "The case law is clear that a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.   Here, the amount of damages certainly was not liquidated or capable of

mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (citations omitted). *See also Beachhead, L.P. v. Solar Night Indus., Inc.*, No. 3:08-CV-0718-D, 2008 WL 4692856 at *1 (N.D. Tex. Oct. 23, 2008) ("Solar's default concedes the truth of the allegations of Beachhead's complaint as to Solar's liability, but not as to damages. 'As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing. That rule, however, is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation.' *James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993). '[L]iquidated damages are those either agreed upon by the parties in a contract, or fixed by operation of law.'") (some citations omitted).  Plaintiff FI prays that the Court will set a hearing to allow testimony and exhibits to establish damages.

> 3.      Amount of Damages, Profits, or Discretionary Award.

43.      "When the Lanham Act has been violated, the Act provides for actual damages, consisting of the defendant's profits, 'any damages sustained by the plaintiff,' and court costs. See 15 U.S.C. § 1117(a)." *Rolls-Royce*, 688 F. Supp. 2d at 156.  Further, the Court is authorized to treble the actual damages.  15 U.S.C. § 1117(a); *T Mobile*, 2009 WL 2003369 at *3.  Further, if the Court should find that recovery based on profits is inadequate, then in its discretion the Court may award such sum as the Court may find to be just.  15 U.S.C. § 1117(a).

44.      With respect to the profits obtained by Defendants, "[r]ecovery of this nature often proves unwieldy or impractical to determine, especially in the case of a default."  *Rolls-Royce*, *supra*, 688 F. Supp. 2d at 156 (citations omitted).  And, an award of this nature "may not reflect the seriousness of the violation nor the need to deter such conduct in the future."  *Id*. (citations omitted).  Undoubtedly for this reason, 15 U.S.C. § 1117(a) provides that "the court may in its discretion enter judgment for such sum as the court shall find to be just" if "profits"

are "inadequate."  Since this is a discretionary matter with the Court, the Court may make such an award without regard to the exact sufficiency of a precise number for profits of the infringer. Due to the circumstance of the default, FI does not have available information to determine the actual profits.  Given the "circumstances of the case," then, Plaintiff FI submits the Court should enter an award of $200,000.00 under this discretionary measure.

       4.      <u>Attorneys' Fees & Costs</u>.

       45.     "The Lanham Act gives this Court the discretion to award attorney's fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). The Fifth Circuit has acknowledged that 'the exceptional case is one in which the defendant's trademark infringement can be characterized as "malicious," "fraudulent," "deliberate," or "willful."' *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir.1992)."  *Chevron*, 2009 WL 2596610 at *3.  "[A]n award of reasonable attorney's fees is appropriate due to the fact that Defendant has completely disregarded this litigation by failing to appear." *Id*. a *4 (citation omitted); *T Mobile*, 2009 WL 2003369 at *4 (same).  *Accord*, *Lyons P'ship*, *supra*, 702 F. Supp. 2d at 119 ("When a defendant has defaulted, then by virtue of its default it is deemed to be a willful infringer.") (citations omitted).

       46.     With respect to the *amount*, under Rule 54(d)(2)(B)(i), Fed.R.Civ.P., a motion for attorneys' fees may "be filed no later than 14 days after the entry of judgment." Here, it is unclear at this juncture whether a hearing as to damages will be held.  If a hearing is held, this will substantially affect the amount of attorneys' fees.  Consequently, the better course of action in this particular instance, Plaintiff FI submits, is to resolve the injunction and damages remedies by a judgment, and then permit Plaintiff to submit proof of attorneys' fees and a "lode star" analysis by affidavit thereafter.  *Cf. T-Mobile*, 2009 WL 2003369 at *5 ("Plaintiff is ordered to

produce an affidavit providing the Court with the information necessary to calculate such reasonable attorney's fees under the lodestar method."); *Chevron*, 2009 WL 2596610 at *5; *S&H Industries*, 932 F. Supp. 2d at 767.

47.     As to recoverable costs, "[t]he clerk may tax costs on 14 days' notice."  Rule 54(d)(1), FRCP.  It seems appropriate, then, to allow Plaintiff to file supporting documents for the determination of costs within the same 14-day post-judgment window as is applicable to attorneys' fees.

      5.     Post-Judgment Interest.

48.     "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  "Such interest shall be calculated from the day of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  *Id*.  "Interest shall be computed daily to the date of payment..., and shall be compounded annually."  28 U.S.C. § 1961(b).  Therefore, Plaintiff FI requests an award of post-judgment interest in accordance with these statutory provisions.

G.     **Conclusion**.

49.     Defendant KDM has failed to file an answer or other responsive pleading or to otherwise defend.  A Clerk's Default has been entered.  All substantive allegations of the Complaint have therefore been admitted except as to damages.  These facts establish the causes of action for trademark infringement, unfair competition under the Lanham Act, and common-law unfair competition.  Liability is therefore established.  Plaintiff is consequently entitled to a permanent injunction against Defendant not to further use "DigiClean", "DigiPad", or any name or mark deceptively similar thereto, and including particularly not to use these monikers as meta

tags.

50.    A hearing is requested as to damages.   Alternatively, the Court may in its discretion, given the circumstances of this case, including that this is a default case, award $200,000, or such other amount as it may determine to be appropriate, in lieu of profits.   Since this is an exceptional case, given the willfulness of choosing not to defend, the Court may award attorneys' fees.   Plaintiff FI respectfully requests such attorneys' fees and submits that they should be ascertained by affidavit following the entry of judgment as to the injunction and damages.  Plaintiff FI also requests that costs be awarded along with post-judgment interest.

**WHEREFORE**, Plaintiff, Flexible Innovations, Ltd., prays the Court will enter a default judgment against Defendant K Design Marketing, Inc., as requested above.

Dated: October 7, 2014.                    Respectfully submitted,


                                           */s/Richard L. Schwartz*
                                           Richard L. Schwartz
                                           Texas Bar No. 17869500
                                           rschwartz@whitakerchalk.com
                                           Lead Counsel in Charge

                                           Thomas F. Harkins, Jr.
                                           Texas Bar No. 09000990
                                           tharkins@whitakerchalk.com

                                           **WHITAKER CHALK SWINDLE**
                                           **   & SCHWARTZ PLLC**
                                           301 Commerce Street, Suite 3500
                                           Fort Worth, Texas 76102
                                           Phone: (817) 878-0500
                                           Fax: (817) 878-0501

                                           **ATTORNEYS FOR PLAINTIFF**
                                           **FLEXIBLE INNOVATIONS LTD.**

140555-v2