IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **FLEXIBLE INNOVATIONS LTD,** a Texas Limited Partnership, | § § § § § § | |
| Plaintiff, | § § | Civil Action No. 4:14-cv-350-O |
| v. | § § § | |
| **K DESIGN MARKETING, INC.,** a Montana Corporation, | § § § | |
| Defendant. | § § § | |

**ORDER**

Before the Court are Plaintiff's Motion for Default Judgment against K Design Marketing, Inc. ("Defendant") (ECF No. 11), filed October 7, 2014; and the Clerk's Entry of Default (ECF No. 9), filed July 9, 2014. After considering the motion, the record, and the applicable law, the Court finds that Plaintiff's motion should be and is hereby **GRANTED**.

**I.   BACKGROUND**

Plaintiff is a Texas limited partnership that owns United States Trademark Registration No. 3,407,948 for DIGICLEAN adhesive microfiber display screen cleaning wipes. Compl. ¶¶ 1, 6, ECF No. 1. Plaintiff has an Exclusive Distributorship Agreement with Rakupuri, Inc., a Japanese company that manufactures, markets, and sells the patented DIGICLEAN wipes, granting Plaintiff exclusive distributorship and sales rights for DIGICLEAN wipes in North America. *Id.* at ¶ 8. The Complaint alleges that Defendant unlawfully used "DIGICLEAN" and deceptively similar words to divert potential DIGICLEAN customers away from Plaintiff to Defendant's websites. *Id.* at ¶¶ 10-

20. Defendant's sites do not sell DIGICLEAN products but instead, sell competing screen cleaners. *See id.* at ¶ 16. Plaintiff alleges Defendant (1) committed trademark violations and engaged in unfair competition in violation of the Lanham Act and (2) engaged in unfair competition in violation of the Texas common law. *Id.* at ¶¶ 21-32; *see* 15 U.S.C. §§ 1114(1)(a), 1125(a).

Plaintiff filed this suit on May 19, 2014. *See generally* Compl., ECF No. 1. Service was executed against Defendant on May 23, 2014, by delivery to Kimberly Kinsinger, who is designated by law to accept service of process on behalf of Defendant, at 1613 South Avenue W, Missoula, Montana. Proof Service 2, ECF No. 7. On July 9, 2014, after Defendant failed to answer, Plaintiff requested and was granted an entry of default against Defendant by the Clerk. *See generally* Pl.'s Req. Entry Default, ECF No. 8; Clerk's Entry Default, ECF No. 9. Plaintiff now moves for default judgment against Defendant. *See generally* Pl.'s Mot. Default J., ECF No. 11.

## II.   LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure by which a party may seek the entry of default judgment. The Fifth Circuit requires a three-step process for entry of a default judgment. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. Fed. R. Civ. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Next, an *entry of default* may be entered when the default is established by affidavit or otherwise. Fed. R. Civ. P. 55(a); *New York Life Ins.*, 84 F.3d at 141. Last, a plaintiff may then apply to the clerk or the Court for a *default judgment* after an entry of default is made. Fed. R. Civ. P. 55(b); *New York Life Ins.*, 84 F.3d at 141.

## III.   ANALYSIS

### A. Appropriateness of Default Judgment

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Furthermore, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). A default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). In determining whether a default judgment should be granted, the Court considers a number of factors including: (1) whether the default was caused by a good faith mistake or excusable neglect; (2) whether there has been substantial prejudice; (3) the harshness of a default judgment; (4) whether there are material issues of fact; (5) whether the grounds for a default judgment are clearly established; and (6) whether the Court would be obligated to set aside the default on the defendant's motion. *Lindsey v. Price Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In deciding whether a default judgment is appropriate in this case, the Court considers each of the default judgment factors. First, there is no evidence that Defendant's failure to respond or otherwise defend this action is the product of a "good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. Second, Defendant's failure to appear in this action causes substantial prejudice because Plaintiff has been unable to receive expeditious relief. *See United States v. Fincanon*, No. 7:08-CV-61-O, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009) (O'Connor, J.) (finding that defendant's failure to respond brought the adversary process to a halt and prejudiced plaintiff's interests). Third, Defendant's failure to respond, despite having received proper service, mitigates the harshness of a default judgment. *See id.* (citing *Lindsey*, 161 F.3d at 893). Fourth, due

3

to Defendant's failure to plead or otherwise respond to the complaint, no material issues of fact have been placed in dispute. *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1205 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."); *Tex. Guaranteed Student Loan Corp. v. Express Moving, LLC*, No. 3:09-CV-824-O, 2010 WL 727756, at *1 (N.D. Tex. Feb. 26, 2010) (O'Connor, J.). Finally, the Court finds no good cause for which it would be obligated to set aside the default if challenged by Defendant. *See Lindsey*, 161 F.3d at 893 (citing Fed. R. Civ. P. 55(c)).

The Court recognizes that a default judgment may not be entered against an infant or incompetent person unless represented in the action by a general guardian, conservator, or other like fiduciary who has appeared. Fed. R. Civ. P. 55(b)(2). Likewise, a default judgment may not be entered against an individual in military service until an attorney is appointed to represent the defendant. 50 U.S.C. § 521. The Court finds that Defendant, a corporation, is not an infant, incompetent, or involved in military service. *See* Req. Entry Default 2 at ¶ 12, ECF No. 8. Consequently, the Court finds that the procedural prerequisites for entry of a default judgment have been satisfied. *See generally* Clerk's Entry Default, ECF No. 9.

**B.     Trademark Infringement & Unfair Competition**

Before the Court may enter default judgment, the Court must assess the merits of Plaintiff's claims and the sufficiency of the Complaint. *See Nishimatsu*, 515 F.2d at 1206 ("[A] defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered."). Relying on a common core of factual allegations, Plaintiff asserts trademark infringement and unfair competition claims under both the Lanham Act and Texas law. Compl. ¶¶ 9-32, ECF No. 1. "As a general rule . . . the same facts which would

4

support an action for trademark infringement [under the Lanham Act] would also support an action for unfair competition," as the gravamen for both trademark infringement and common law unfair competition "is whether the challenged mark is likely to cause confusion." *Boston Prof'l Hockey Assoc., Inc. v. Dall. Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975); *accord Marathon Mfg. Co. v. Enerlite Products Corp.*, 767 F.2d 214, 216 (5th Cir. 1985). In addition, the analysis with respect to unfair competition is essentially identical under the Lanham Act and Texas law. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010). Based on the foregoing, the Court will analyze Plaintiff's federal law claims for trademark infringement and state and federal claims for unfair competition together under the Lanham Act. *See Boston Prof'l Hockey Assoc.*, 510 F.2d at 1010; *see also Amazing Spaces, Inc.*, 608 F.3d at 236 n.7.

To establish trademark infringement under the Lanham Act, a plaintiff must (1) demonstrate ownership in a legally protectable mark and (2) show infringement by establishing a likelihood of confusion. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008); *see also* 15 U.S.C. 1125(a). A mark need not be registered to be protected under the Lanham Act since ownership of a mark is established by use, not registration. *Union Nat'l Bank of Tex., Laredo v. Union Nat'l Bank of Tex., Austin*, 909 F.2d 839, 842 (5th Cir. 1990). However, registration of a trademark is prima facie evidence–creating a rebuttable presumption of validity–that (1) the mark is valid and (2) the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services. *See Amazing Spaces, Inc.*, 608 F.3d at 237. The trademark owner may "enjoin other . . . users from using the mark, or one that is deceptively similar to it, subject to limits imposed by the senior user's market and natural area of expansion." *Union Nat'l Bank of Tex., Laredo*, 909 F.2d at 842-43.

In the context of trademark infringement, "likelihood of confusion" means a probability of confusion, which is more than a mere possibility. *Smack Apparel Co.*, 550 F.3d at 478. The Fifth Circuit considers the following non-exhaustive "digits of confusion" when determining whether a likelihood of confusion exists: "(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion." *Id.* (internal quotation marks omitted). "No single factor is dispositive, and a finding of likelihood of confusion does not require a positive finding on a majority of these 'digits of confusion.'" *Id.* (citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 664 (5th Cir. 2000)). A court may also consider other factors it deems relevant in determining whether a likelihood of confusion exists. *Id.*

Plaintiff's pleadings indicate that Plaintiff owns the United States Trademark Registration for DIGICLEAN and has an Exclusive Distributorship Agreement granting Plaintiff exclusive rights to distribute and sell DIGICLEAN products in North America. Compl. at ¶¶ 6, 8. Additionally, Plaintiff alleges that on May 28, 2013, it received a series of injunctions enjoining a separate California general partnership and its "agents, attorneys, employees, and representatives, and all who are in active concert with them" from using the terms "DigiClean," "DigiPad," "DigiCloth," "DigiStand," and any other deceptively similar names to market the partnership's competing "MicroClean" screen-cleaner products. *Id.* at ¶ 9.

Plaintiff avers that Defendant sells MicroClean screen-cleaning products on at least two websites that Defendant owns and operates. *See id.* at ¶¶ 11-20. Plaintiff maintains that on these sites, Defendant improperly uses "DIGICLEAN" and related terms to mislead customers into

believing that Defendant sells both DIGICLEAN and MicroClean products. *See id.* Specifically, Plaintiff complains that "[w]hen a prospective customer searches 'Google' for 'DIGICLEAN' product, one of the first several 'hits' results in a web-based link to www.imprintmyscreencleaner.com webpage." *Id.* at ¶ 12. In addition, when a user clicks on the "MicrocleanMAX" tab, a screen with the URL www.imprintmyscreencleaner.com/digiclean.html appears. *Id*. at ¶ 19. Plaintiff pleads that Defendant has placed hidden meta tags, such as "digiclean," "digi pad," and "digi clean" within the same website in a willful effort to misdirect customers searching for Plaintiff's DIGICLEAN products to Defendant's site. *Id.* at ¶¶ 13, 16. Plaintiff states that Defendant also displays a "DIGI PAD" product, which it does not sell, in order to market MicroClean products. *Id.* Further, Plaintiff complains that Defendant's www.imprintmylogo.com site details various DIGICLEAN products when the term "DIGICLEAN" is typed into the Quick Search box in an effort to market competing MicroClean products. *Id.* at ¶¶ 14-15. Plaintiff maintains that Defendant "is attempting to 'bait and switch' prospective purchasers by illegally using Plaintiff['s] 'DIGICLEAN' mark as a hidden key word or meta tag to misdirect Plaintiff['s] 'DIGICLEAN' customers to Defendant['s] website, believing that Defendant . . . is a provider of 'DIGICLEAN' product (when it is not), so as to sell IdeaMax's 'MICROCLEAN' products." Pl.'s Mot. Default J. ¶ 22, ECF No. 11.

The Court finds that Plaintiff sufficiently pleaded a cause of action for trademark infringement and unfair competition under the Lanham Act and for unfair competition under Texas law by showing that (1) Plaintiff owned the legally recognizable trademark for "DIGICLEAN" and (2) Defendant created a likelihood of confusion in potential DIGICLEAN customers. *See Smack Apparel Co.*, 550 F.3d at 478; *see also* 15 U.S.C. § 1125(a). The unrebutted evidence showing that

Plaintiff owns the United States Registered Trademark for "DIGICLEAN" demonstrates that Plaintiff owns that legally recognizable trademark. *See* U.S.C. §§ 1057(b), 1115(a); *Amazing Spaces, Inc.*, 608 F.3d at 236-37. Because Plaintiff has exclusive right to sell and distribute DIGICLEAN products in North America under its Exclusive Distributorship Agreement, Plaintiff's market extends throughout the United States. *See Union Nat'l Bank of Tex., Laredo*, 909 F.2d at 842-43.

The evidence in this case weighs in favor of finding that Defendant's placement of DIGICLEAN-related terms and products on Defendant's websites creates a likelihood of confusion among potential DIGICLEAN customers. *See Smack Apparel Co.*, 550 F.3d at 478. Specifically, Defendant caused confusion by (1) using "digiclean" as part of a URL for one of Defendant's websites, (2) placing deceptively similar terms such as "digiclean", "digipad", and "digi clean" within Defendant's websites in such a way that those conducting internet searches for DIGICLEAN products would be directed to Defendant's website, and (3) using "digiclean" and deceptively similar terms for marketing MicroClean products. Defendant's intention to mislead customers is evident from the various ways that Defendant used the "DIGICLEAN" on websites that do not sell DIGICLEAN products. These factors indicate that Defendant's use of the "DIGICLEAN" trademark created a likelihood of confusion in potential DIGICLEAN customers. *See id.*

### C. Remedies

Default judgments are judgments on the merits that conclusively establish a defendant's liability but do not establish the amount of damages. *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 3:10-cv-2006–L, 2012 WL 216274, at *1 (N.D. Tex Jan. 25, 2012) (Lindsay, J.) (quoting *United States v. Shipco Gen.*, 814 F.2d 1011, 1014 (5th Cir. 1987)). In awarding damages, "[a] default

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Therefore, the relief prayed for in a complaint limits the relief available on default judgment. *Arista Records LLC v. Salas*, No. 3:08-cv-855-O, 2009 WL 290185, at *2 (N.D. Tex. Feb. 5, 2009) (O'Connor, J.).

    1.    Damages

Turning first to Plaintiff's request for damages, the Fifth Circuit has held that in the context of a default judgment, damages may not be "awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *United Artists Corp. v. Freeman*, 605 F. 2d 854, 857 (5th Cir. 1979). In addition, a hearing is not necessary where the damages and costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Under the Lanham Act, when a defendant wilfully violates § 1125, plaintiffs are entitled to recover (1) defendant's profits, (2) plaintiff's damages, and (3) court costs. In addition, a court assessing damages may, as proper under the circumstances of the case, enter judgment for any amount up to three times actual damages. 15 U.S.C. § 1117(a). If this amount is inadequate for just compensation, a court may, it its discretion, award a sum the court finds just in the circumstances of the case; however, the award amount must be compensation and not a penalty. *Id.*

In its pleadings, Plaintiff requests unspecified amounts of treble damages; alternatively, Plaintiff seeks an amount above actual damages as the Court may, in its discretion, determine to be just. Compl. at ¶¶ 23, 27. Plaintiff further seeks court costs, prejudgment and postjudgment interest, and any other relief to which Plaintiff may be entitled. *Id.* at ¶¶ F-H. Plaintiff's pleadings fail to establish the facts necessary to calculate a damage award; therefore, Plaintiff is **ORDERED** to

produce an affidavit establishing damage amounts and court costs, if Plaintiff seeks to receive damages.

### 2. Exemplary Damages

Pleading that Defendant's actions were actuated by fraud and/or malice, Plaintiff seeks exemplary damages as available under Chapter 41 of the Texas Civil Practices and Remedies Code. Compl. at ¶¶ 31-32. Under this Chapter, the Court may only award exemplary damages for violations of Texas common law "if the claimant proves from clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 2013).

"'Fraud' means fraud other than constructive fraud." *Id.* at § 41.001(6). An actor commits fraud by making "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

"'Malice' means a specific intent by the defendant to cause substantial injury or harm to the claimant." Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7). Specific intent requires the actor either to desire to cause the consequences resulting from his act or believe that the consequences are substantially certain to come about because of it. *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985); *accord Seber v. Union Pacific R.R. Co.*, 350 S.W.3d 640, 654 (Tex.App.–Houston [14th Dist.] 2011, no pet. h.). "Malice may be proven by direct or circumstantial evidence." *Seber*, 350 S.W.3d at 654 (citation omitted).

In order to determine an amount of exemplary damages, a court must consider evidence, if any, relating to "(1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant. Tex. Civ. Prac. & Rem. Code Ann. § 41.011(a). The amount of any award for exemplary damages must be in reasonable proportion to the amount of actual damages. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981).

Regarding Plaintiff's allegation of fraud, Plaintiff's pleadings establish that Defendant made false, material representations by displaying DIGICLEAN products and using "digiclean" and similar terms on its websites, despite not being capable of selling DIGICLEAN products. *See* Compl. at ¶¶ 11-20. Plaintiff demonstrates that Defendant knew the representation to be false because Defendant does not sell DIGICLEAN products. *See id.* Plaintiff also demonstrates that Defendant intended the misrepresentation to be acted upon because such product and verbiage placement was utilized to misdirect DIGICLEAN's potential customers. *See id.* However, Plaintiff does not establish that the person to whom the misrepresentation was made, potential online DIGICLEAN shoppers, acted in reliance upon this misrepresentation. Therefore, Plaintiff fails to establish that Defendant committed actual fraud under Texas law. *See Fondren*, 196 S.W.3d at 216.

Concerning Plaintiff's allegation of malice, Plaintiff demonstrates that Defendant had specific intent to misdirect potential DIGICLEAN customers to Plaintiff's websites. *See* Compl. at ¶¶ 11-20. Plaintiff establishes Defendant's specific intent by pleading that Defendant, in its desire to lure DIGICLEAN customers to Defendant's websites, (1) placed "digiclean" and related words on its websites; (2) displayed a "DIGI PAD" product on its website; and (3) detailed DIGICLEAN

products in efforts to market its competing products. *See id.* The Court finds that the loss of potential online customers is a substantial harm that Defendant intended to cause to Plaintiff. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001(7). Therefore, the Court finds that Plaintiff's pleadings establish that Defendant acted maliciously as defined by Texas law. *Id.* The Court will calculate an award of exemplary damages upon Plaintiff's submission of an appropriate affidavit detailing the amount of actual damages. *See Alamo Nat'l Bank,* 616 S.W.2d at 910.

        3.        Permanent Injunction

In addition to damages, Plaintiff requests a permanent injunction enjoining Defendant from infringing Plaintiff's trademark and from unfairly competing against Plaintiff. Mot. Default J. at ¶¶ 38-41; Compl. at ¶ A. Thus, the Court next considers whether a permanent injunction is an appropriate remedy in this case. The Court has the power to grant a permanent injunction for a violation of the Lanham Act. 15 U.S.C. § 1116(a). A permanent injunction is appropriate if a plaintiff can prove (1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest. *See Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997) (Sanders, J.), *aff'd* 168 F.3d 486 (5th Cir. 1999). Courts have acknowledged that default against a defendant is tantamount to actual success on the merits. *See, e.g., Twist & Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 785 (E.D. Tex. 2006).

Here, the Court finds that Plaintiff's request for a permanent injunction is well-taken. Defendant's default constitutes actual success on the merits. *Id.* Further, Plaintiff has no other adequate remedy at law for future infringement because monetary damages will not prevent future infringement by Defendant. *See, e.g., W.B. Music Corp. v. Big Daddy's Entm't, Inc.*, No. EP-05-CA-

267-PRM, 2005 WL 2662553, at *3 (W.D. Tex. Oct. 18, 2005). "Requiring Defendant to restrain from future infringement will cause [Defendant] minimal to no harm, and any potential harm caused by requiring [Defendant] to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted." *T-Mobile USA, Inc. v. Shazia & Noushad Corp.*, No. 3:08-CV-00341, 2009 WL 2003369, at *4 (N.D. Tex. July 10, 2009) (O'Connor, J.). Finally, an injunction would serve the public interest by promoting compliance with intellectual property law. *See Artista Records, Inc. v. Kabani*, No. 303-CV-1191-H, 2004 WL 884445, at *4 (N.D. Tex. Apr. 23, 2004) (Sanders, J.). Accordingly, a permanent injunction is an appropriate remedy upon the entry of default judgment.

    4.  Attorneys' Fees

Plaintiff further requests reasonable attorneys' fees both in its Complaint and its Motion. Compl. at ¶¶ 24, 28, E; Pl.'s Mot. Default J. at ¶¶ 45-46. The Lanham Act gives this Court the discretion to award attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). The Fifth Circuit has acknowledged that "the exceptional case is one in which the defendant's trademark infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992).

Here, the Court finds that Plaintiff should be awarded reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a). Defendant's trademark infringement was willful and deliberate. Defendant willfully placed DIGICLEAN products and related terms both overtly and covertly on its websites in an effort to divert Plaintiff's potential customers. Compl. at ¶¶ 11-20. Additionally, an award of reasonable attorneys' fees is appropriate due to the fact that Defendant has completely disregarded this litigation by failing to reply. *See, e.g., Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219

F.R.D. 494, 502 (C.D. Cal. 2003) (noting that "a case may be deemed 'exceptional,' and merit an award of attorneys' fees under the Lanham Act, when Defendant disregards the proceedings").

The Fifth Circuit uses the "lodestar" method to calculate reasonable attorneys' fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar fee is calculated by multiplying the number of hours recently spent on the matter by a reasonable hourly rate for such work in the community. *Id.* Once the calculation is made, the Court may raise or lower the lodestar amount based on the weight of twelve factors set forth in *Johnson v. Georgia Highway Express*. 488 F.2d 714, 717-19 (5th Cir. 1974). The lodestar award may not be adjusted if the *Johnson* factor was already considered when determining the original lodestar amount. *Id.*

Under this method, the Court may not rule based on a default judgment alone. *Chevron Intellectual Prop., LLC v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *4 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.). The Fifth Circuit requires that the claimants establish a reasonable hourly rate and the total number of hours expended on the litigation, or otherwise establish by particular methods of billing or calculation the requisite evidence of reasonable and necessary attorney fees. *Id.*; *see also Tollett v. City of Kemah*, 285 F.3d 357, 367-69 (5th Cir. 2002). For example, an affidavit from a responsible attorney may set out these details sufficiently. *See Tollett*, 285 F.3d at 367-69.

In this case, Plaintiff has not yet provided the Court with the information needed to calculate reasonable attorneys' fees. The Court **ORDERS** Plaintiff to produce an affidavit including the information necessary to calculate such reasonable attorneys' fees under the lodestar method, if Plaintiff seeks to obtain attorneys' fees.

IV.    **CONCLUSION**

Based on the foregoing, the Court **GRANTS** Plaintiff's Motion for Default Judgment (ECF No. 11). It is **ORDERED** that Plaintiff submit its claim for damages in an affidavit to this Court on or before **November 24, 2014**. Plaintiff is further **ORDERED** to submit an affidavit establishing a reasonable calculation of attorneys fees by **November 24, 2014**. In accordance with Rule 58 of the Federal Rules of Civil Procedure, a judgment will issue by separate document.

**SO ORDERED** on this **10th day** of **November, 2014**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**